UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY RIZZO, Individually and as
Parent and Natural Guardian of
Michaela Christine Rizzo and
Noah Matthew Rizzo,

                              Plaintiff,              02-CV-6322T

                v.                                    **DECISION
                                                      and ORDER**

EDISON INC., CHARTER SCHOOL OF SCIENCE
AND TECHNOLOGY, JOSEPH ACCONGIO,
Individually and in his capacity as
Principal of the Charter School of
Science and Technology, CITY OF
ROCHESTER, NEW YORK, and ROCHESTER
POLICE OFFICER CORIDDI, AND KNOWN OR
UNKNOWN OFFICERS, AND OTHER SUPERVISORY
PERSONNEL OF THE ROCHESTER POLICE
DEPARTMENT,

                              Defendants.
_____

INTRODUCTION

     Plaintiff Mary Rizzo, ("Rizzo"), a former teacher at the

Edison Tech Charter School, ("Edison Tech") brings this action

against defendants Edison Inc. Charter School of Science and

Technology, ("Edison"), Joseph Accongio, ("Accongio"), the

principal of the Edison Tech Charter School, the City of Rochester,

and City of Rochester Police Officer Frank Coriddi, ("Coriddi"),

seeking damages for the defendants' alleged negligence, false

imprisonment, malicious prosecution, intentional infliction of

emotional distress, libel, violation of her civil rights, and false

arrest.  Specifically, plaintiff contends in seven causes of action

that her rights were violated when she was falsely accused of, and prosecuted for, making a bomb threat directed towards the Edison Tech Charter School.   Plaintiff was acquitted of the criminal charges against her, and thereafter, brought this action in State court seeking civil damages.

On June 17, 2002, defendants removed  this action to federal court.   After denying plaintiff's motion for  default judgment, (which was premised on the existence of a typographical error contained in defendants' notice of removal), and following the completion of discovery,  each of the parties has moved for summary judgment.

By motion dated June 15, 2004, defendants City of Rochester and Coriddi move for summary judgment with respect to all seven of plaintiff's causes of action on grounds that plaintiff has not named  the  City  of  Rochester  or  Officer  Coriddi  in  two  of plaintiff's claims, and that plaintiff has failed to state a cause of action with respect to the remaining five claims.  Specifically, with  respect  to  plaintiff's  claims  for  false  imprisonment, malicious  prosecution,  false  arrest,  and  violation  of  the plaintiff's civil rights, defendants City of Rochester and Coriddi contend that plaintiff can not state a cause of action because there was probable cause for her arrest and subsequent prosecution.

By motion dated June 18, 2004, defendants Edison and Accongio move for summary judgment on grounds that plaintiff has failed to

state causes of action for negligence, libel, malicious prosecution, false arrest, false imprisonment, violation of civil rights, or intentional infliction of emotional distress.

By motion dated June 18, 2004, plaintiff moves for summary judgment against defendants Coriddi and the City of Rochester with respect to her claims for false imrisonment, malicious prosecution, violation of civil rights, and false arrest.  Plaintiff moves for summary judgment against defendants Accongio and Edison with respect to her libel claim.

For the reasons set forth below, I grant the defendants' motions for summary judgment, and deny plaintiff's motion for summary judgment.

BACKGROUND

Plaintiff Mary Rizzo was employed as a teacher at the Edison Tech Charter School located in Rochester, N.Y., from September, 2000 until May, 2001.  In December, 2000, plaintiff received two written warnings regarding her performance from Joseph Accongio, the Principal of the Edison Tech Charter School.  On May 15, 2001, a summary evaluation of Rizzo's performance was prepared by Edison Tech Administrator Jane Stava stating, among other things that Rizzo's:

> Instructional lessons, delivery and materials
> are fundamentally lacking in basic
> organization and preparation.  The essential
> elements of lesson design have not been

> followed.   Learning Goals, objectives,
> expectations and the purposes for learning are
> not clearly communicated to students.
> Constructive feedback and assessment of
> student performance have not met Edison
> standards.  The learning environment does not
> foster a sense of order, independence or
> enthusiasm for teaching and learning.   Ms.
> Rizzo was generally not responsive to the
> suggestions of the mentor assigned to her
> house team.

See Exhibit 16 of the Joint Exhibits submitted by the Defendants.

According to Accongio, plaintiff had several performance related problems, and was the subject of several complaints from students and parents.  As a result of the performance problems, Accongio informed plaintiff that her contract would not be renewed for the following year.  Accongio allegedly allowed plaintiff to resign prior to being terminated from her employment.  Although plaintiff disputes Accongio's statement that he asked her to resign, she nevertheless submitted a written resignation to Edison Tech on May 11, 2001.

Eleven days later, on May 21, 2001, plaintiff was involved in a physical altercation with a female student.  Plaintiff claimed that she was injured as a result of the incident, and filed a workers' compensation report.  On May 22, 2001, Rizzo informed the school that she would be returning to work on May 23, 2001, but Accongio told her not to report to school until he completed his investigation of the incident involving the student.  He allegedly told plaintiff that she would be considered on paid leave until he

4

finished his investigation.  That same day, plaintiff appeared in Monroe County Family Court and obtained a temporary restraining order against her husband directing him to refrain from, among other things, assaulting, harassing, menacing intimidating or threatening the plaintiff.  Despite obtaining the restraining order, plaintiff and her husband appeared at Edison Tech after school hours on May 23, 2001 despite a previous directive from Accongio that plaintiff was not to appear on school grounds.

While plaintiff objects to the characterizations of her employment skills and the relevancy of her work history, there is no good-faith dispute that as of May 23, 2001, plaintiff had resigned her employment with the school, had been put on paid leave, and had been directed to remain off of Edison Tech School property.

On May 24, 2001, at approximately 2:13 p.m., Rochelle Alston ("Alston") a secretary at the Edison School received a telephone call from a person who identified herself as Mary Rizzo.  According to Alston, the caller wanted to speak to Accongio, and when told that he was in a meeting, told Alston that she was going to shoot all of the "black bitches" in the office and blow the school up.[1] Alston immediately informed Accongio of the telephone call, and Accongio attempted to call Rizzo at her home number.  Upon two

---

[1] The administrative staff of Edison Tech was comprised exclusively of African-American women.

5

unsuccessful attempts to call Rizzo, Accongio called officer
Coriddi, an officer with the Rochester Police Department who was
assigned to a nearby Rochester City School.  Accongio also asked
Alston to write down what the caller had said.  Alston, who was
allegedly too nervous to write or type, dictated the following two
statements to colleagues shortly after she received the call.  In
her first statement, Alston stated that:

> I received a called [sic] at approximately
> 2:13 p.m.  The person on the phone asked to
> speak to Dr. Accongio.  I stated that he was
> in a conference, who was calling?  The woman
> stated "this is Mary Rizzo.["] I stated that I
> would get him for her and could she hold on a
> moment.  At this time, prior to putting her
> [on] hold . . . Then she stated, "What black
> bitch are you? I am tired of all you bitches
> and I'm coming to blow up the school and shoot
> all you bitches".

The statement was signed by Alston and dated May 24, 2001.  Joint
Defense Exhibit 35.

In the second statement, also signed by Alston and dated May
24, 2001, Alston stated that:

> I received a call at approximately 2:13 pm.
> The person on the phone asked to speak to Dr.
> Accongio.   I stated that he was in a
> conference, and asked "who was calling?"  The
> woman stated, "This is Mary Rizzo."  When she
> told me that it was Mary Rizzo, I stated that
> "I would get him for her."  At this point she
> said, "Which Black Bitch are you," I stated,
> "pardon me" and she repeated herself.   And
> then I stated "I'll will [sic] get him for
> you[.]" She then stated "I am tired of all
> you, I just lost my job the other day, and I
> am coming to blow up the school and shoot all

> you black bitches in the office[.]" She then
> hung up the phone.
> I immediately told the secretary in
> charge (Ms. Tamantha) what had transpired.
> She told me to tell the principal immediately.
> I found Dr. Accongio and told him what
> happened.

Joint Defense Exhibit 36.

Upon officer Coriddi's arrival, Accongio claims that he turned over investigation of the matter to him, and focused his attention on safely evacuating the school in response to the threat. Coriddi interviewed Alston, and she presented Coriddi with her first typed statement. According to both Alston and Coriddi, Alston told Coriddi that she recognized the caller's voice as that of Mary Rizzo. May 21, 2004 Affidavit of Rochelle Alston at ¶ 6, June 8, 2004 Affidavit of Frank Coriddi at ¶ 14. As will be discussed below, plaintiff vigorously contests Alston's claim that she recognized Rizzo's voice. Rather, plaintiff contends that Alston assumed it was Mary Rizzo calling solely because the caller identified herself as Mary Rizzo.

While at the school, Coriddi telephoned his supervising officer Captain Fred Bell ("Bell") and informed him of the situation. Based on this information, Captain Bell determined that Rizzo should be arrested. According to Bell, he made the decision to have plaintiff arrested because he had been informed by officer Coriddi that Rochelle Alston recognized the caller's voice as that of Mary Rizzo. June 24, 2004 Affidavit of Fred Bell at ¶ 6.

Upon returning to his precinct, Coriddi was directed to prepare a misdemeanor complaint charging Rizzo with Aggravated Harassment in the Second Degree. According to Coriddi, he erroneously prepared the Criminal Information on a form stating that the factual basis for the complaint arose out of his personal knowledge. Coriddi acknowledges that the Criminal Information should have been completed on form stating that the factual basis for the complaint was based upon "information and belief." Coriddi attached a crime report, along with Alston's first typed statement to the Information, and submitted the Information to his superior officer Sergeant Bishop. According to Captain Bell, he did not see the Criminal Information form prepared by Coriddi or the supporting statement signed by Alston prior to ordering the arrest of Rizzo, and therefore, he contends that the deficiencies in those documents played no role in his decision to have plaintiff arrested. June 24, 2004 Affidavit of Fred Bell at ¶ 15.

Rizzo was arrested at her home in Greece, New York at approximately 8:30 p.m. on May 24, 2001. Plaintiff was released at approximately 5:00 a.m. on May 25, 2001. Thereafter, in November, 2001, plaintiff was tried before a jury in Rochester City court, where she was acquitted of the criminal charge of Aggravated Harassment in the Second Degree.

DISCUSSION

I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  When considering whether a genuine issue of fact exists for purposes of a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought.  See R.B. Ventures, Ltd. v. Shane, 112 F.3d 54 (2d Cir. 1997).  It is only if after considering the evidence in the light most favorable to the non-moving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  See Annis v. County of Westchester, 136 F.3d 239 (2d Cir. 1998).


II.  Defendant City of Rochester and Coriddi's Motion for Summary Judgment.

A.   False Arrest, False Imprisonment, Malicious Prosecution, and Civil Rights Claims.

1.   Legal Standards

a.   False Arrest and False Imprisonment

9

Plaintiff alleges that her arrest on May 24, 2001, and subsequent detention constituted false arrest and false imprisonment under New York law.  The elements required to state a claim of false arrest or false imprisonment under New York law are identical.  Blanchfield v. State of N.Y., 104 Misc. 2d 21, 24 (Ct. of Claims 1980).  To state a claim for false imprisonment or false arrest under New York law, a plaintiff must establish that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff did not consent to the confinement; (3) the plaintiff was aware that he was confined; and (4) the confinement was not otherwise privileged, such as confinement pursuant to a warrant or with probable cause or immunity protection.  Curley v. AMR Corp., 153 F.3d 5, 13 (2nd Cir. 1998) (false imprisonment claim); (citing Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42, 45 (2d Cir.1985); Bernard v. U.S., 25 F.3d 98, 102 (2nd Cir 1994) (false arrest claim).

b.   Malicious Prosecution

Plaintiff alleges that the prosecution of the Harassment charge against her was unwarranted and constituted malicious prosecution.  To state a claim for malicious prosecution under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Russell v. Smith, 68

F.3d 33, 35 (2nd Cir. 1995); <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2nd Cir. 1997).

     c.   <u>Civil Rights Claims</u>.

Plaintiff alleges that as a result of the false arrest, false imprisonment, and malicious prosecution against her, she was denied her federal Constitutional rights in violation of 42 U.S.C. § 1983. "A Section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2nd Cir. 1996)

     2.   Plaintiff's false arrest, false imprisonment and civil rights claims are barred because there was probable cause to arrest plaintiff on the charge of Second Degree Harassment.

To state a claim of false arrest, false imprisonment, or the violation of a plaintiff's civil rights resulting from false arrest or false imprisonment, a plaintiff must establish that the arresting officer lacked probable cause to arrest and/or confine the plaintiff. "Probable cause to arrest 'constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983.'" <u>Mandina v. City of Yonkers</u>, 1998 WL 637471 at *3 (S.D.N.Y., Sept. 16, 1998)(citing <u>Weyant</u>, 101 F.3d at 852 (internal citation omitted)). Probable cause to arrest is also a complete defense to

a claim of false imprisonment.  Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985).  With respect to a claim for malicious prosecution, a finding of probable cause to arrest will serve as a defense to a malicious prosecution claim in the absence of evidence that authorities became aware of or suppressed exculpatory evidence subsequent to the plaintiff's arrest but prior to prosecution.  Williams v. City of New York, 2003 WL 22434151 (S.D.N.Y., October 23, 2003).

"Probable cause [to arrest] exists where officers 'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person arrested has committed or is committing a crime.'"  Mandina, 1998 WL 637471 at *3 (quoting Weyant, 101 F.3d at 852).  This is an objective standard, and where there are no material issues of fact in dispute, a claim of false arrest, false imprisonment, malicious prosecution, or violation of civil rights based on any of those actions may properly be disposed of on motion for summary judgment.  Parkin v. Cornell University, 78 N.Y.2d 523, 529 (1991).  Probable cause to prosecute exists where there are "facts and circumstances [that] would lead a reasonably prudent person in like circumstances to believe [that the criminal defendant is] guilty." Colon v. City of New York, 60 N.Y.2d 78, 82 (1983)(citations omitted).

12

In the instant case, assuming the facts in the light most favorable to the plaintiff, I find that there are no material questions of fact in dispute, and that as a matter of law, there was probable cause to arrest and prosecute the plaintiff on Harassment charges.  There was probable cause to arrest plaintiff because the police had information from a citizen witness, Rochelle Alston, that Rizzo phoned in a threat to Edison Tech.  Moreover, this information was reasonably trustworthy because Alston told officer Coriddi at the time of the incident that she recognized the caller's voice as that of Mary Rizzo, and informed Coriddi that the caller identified herself as Rizzo.

It is well established that probable cause to arrest a suspect exists when a crime victim identifies the suspect.  "Both New York State and federal courts have held that a purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest."  Donovan v. Briggs, 250 F.Supp.2d 242, 251-252 (W.D.N.Y., 2003)(Larimer, J.).  In the absence of information to suggest that the witness' information is not credible, the witness' identification of the suspect will establish probable cause to arrest that suspect.  Id. at 252, citing Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999).

Probable cause to arrest will attach even if the eyewitness is mistaken about a suspect's identity.  "[P]robable cause can exist even where it is based on mistaken information, so long as the

arresting officer acted reasonably and in good faith in relying on that information." Mazza v. City of New York, 1999 U.S. Dist Lexis 13192, *13-14 (E.D.N.Y. 1999)(quoting Bernard v. United States, 25 F.3d 98, 102 (2nd Cir. 1994).  In this case, even assuming that Rizzo did not make the threatening phone call to Edison Tech, probable cause for her arrest existed because Rochelle Alston told police that the caller identified herself as Rizzo, and that she recognized the caller's voice as that of Mary Rizzo.  Plaintiff has failed to submit any evidence that Alston acted in bad faith or lied to police, and therefore, even if Alston was mistaken, and even if Rizzo did not in fact make the phone call, it was reasonable for the police to act on Alston's complaint and arrest Rizzo.

Plaintiff, however, argues that Alston did not in fact recognize Rizzo's voice at the time the call was made, or, at the very least, that a question of fact exists as to whether or not Alston recognized Rizzo's voice.  In support of this argument, plaintiff relies on the written statement given to the police by Alston which does not state that Alston recognized Rizzo's voice.  Plaintiff further relies on Alston's testimony given during plaintiff's criminal trial, which plaintiff contends proves that Alston did not recognize Rizzo's voice as the voice of the threatening caller.

14

With respect to the written statement provided by Alston at the time of the incident, it is clear that neither written statement prepared by Alston indicates that she recognized the caller's voice.   Nevertheless, Alston has provided a sworn statement in which she states unequivocally that she recognized the threatening caller's voice as that of Mary Rizzo, and that she informed both her principal and officer Coriddi that she recognized the caller as Mary Rizzo.   May 21, 2004 Affidavit of Rochelle Alston at ¶¶ 4, 6.   Both Coriddi and Accongio corroborate Alston's account of events.   Coriddi stated in his June 8, 2004 Affidavit that Alston informed him that she recognized Rizzo's voice as the voice of the threatening caller.   June 8, 2004 Affidavit of Frank Coriddi at ¶ 14.   Accongio stated in his Affidavit that Alston informed him that she recognized the caller's voice as that of Mary Rizzo.   June 4, 2004 Affidavit of Joseph Accongio at ¶ 62. Plaintiff has failed to come forward with any evidence to controvert the statements and testimony of these three witnesses. Because the uncontroverted evidence establishes that Alston recognized Rizzo's voice as the voice of the threatening caller, and because the evidence establishes that she informed Coriddi at the time of the incident that she recognized Rizzo's voice, probable cause to arrest existed despite the fact that her written statement did not specifically state that she recognized Rizzo's voice.

Moreover, plaintiff has not submitted any evidence that would controvert Alston's claim that she believed in good faith that Rizzo made the phone call.  Although plaintiff had an opportunity to depose Alston in this civil proceeding, plaintiff has chosen not to do so.  In an attempt to discredit Alston's testimony and statements indicating that she recognized the plaintiff's voice, plaintiff chooses instead to rely on a single answer to an ambiguous question given during Alston's testimony at plaintiff's criminal trial.  At that trial, Alston testified that she believed the voice of the caller was Mary Rizzo's.  Trial Transcript at pp. 38-40, lines 22-9.  Thereafter, on re-cross-examination, plaintiff's counsel attempted to establish that Alston had not actually recognized Rizzo's voice.  Specifically, in asking Alston how she knew the caller was Rizzo, counsel asked:

> Q.  And just to make it clear, [in determining that the caller was Rizzo] you assumed it based on a couple of different things. One, was that you knew that Mary Rizzo was a teacher at the school, right?
>
> A.  And I knew her as Ms. Rizzo, correct.
>
> . . .
>
> Q.  So that was one of the reasons that you assumed it must have been her, right, or might have been her?
> A.  Yes.
>
> Q.  And another reason was because whoever made the call apparently knew something about the racial makeup of the staff; is that right?

A.   Yes.

Q.   And the real reason is because someone used her name? That was what really made you make the assumption; isn't that correct ma'am?

A.   No.

Q.   You didn't know the voice, though, did you.

A.   No.

Trial transcript at pp. 46-47, lines 16-11.

According to the plaintiff, the fact that Alston answered "no" to the question, "you didn't know the voice, though, did you" constitutes evidence that Alston did not recognize Rizzo's voice as the voice of the threatening caller.  Plaintiff's characterization of Alston's answer, however, is incorrect.  The question asked by counsel was not whether she recognized the voice, but whether she <u>did not</u> recognize the voice.  If Alston had not recognized the voice of the caller, (as plaintiff argues) the answer to the question "you didn't know the voice, though, did you" would be "yes"-meaning--"that is correct, I did not know the voice." Instead, however, Alston answered "no."  "No" would be the proper response if Alston did recognize the voice, because an answer of "no" would indicate that counsel's statement "you didn't know the voice" was incorrect.  Accordingly, despite plaintiff's characterization of Alston's answer, Alston's answer to counsel's question, and indeed the whole of her testimony as corroborated by

Coriddi and Accongio reveals that she did recognize Rizzo's voice as the voice of the threatening caller.

Irrespective of Alston's testimony and written statements, plaintiff argues that her arrest was not supported by probable cause because officer Coriddi erroneously swore that he had personal knowledge of the events giving rise to the charges against Rizzo.  I find this argument, however, to be without merit. Captain Bell, who ordered the plaintiff's arrest, stated that he did so on the basis of his knowledge that Alston had received a call from a person identifying herself as Mary Rizzo, and that Alston had informed Coriddi that she recognized Rizzo's voice as that of the caller.  June 24, 2004 Affidavit of Fred Bell at ¶ 6. As stated above, this information was sufficient to establish probable cause for plaintiff's arrest, and the fact that Coriddi filled out the improper form in submitting his criminal charge does not vitiate the basis for a finding of probable cause.

Finally, plaintiff attempts to submit two expert opinions in support of her argument that her arrest lacked probable cause. Among other things, these opinions suggest that the police should have conducted further investigation prior to arresting Rizzo. However, the issue of whether or not probable cause to arrest exists is a legal determination that is not properly the subject of expert opinion testimony.  See e.g. Stuart v. United States, 23 F.3d 1483, 1487 (9th Cir. 1994)(expert may not offer opinion as to

what constitutes "probable cause").   Secondly, plaintiff's purported expert David Grossi was never disclosed by plaintiff as an expert witness, and accordingly his affidavit may not be considered by the court.   FED.R.CIV.P. 26(a)(2); FED.R.CIV.P. 37. Finally, with respect to plaintiff's argument that the police should have investigated further prior to arresting plaintiff, the police need not explore every avenue prior to arresting a suspect, nor do the police have to establish a suspect's guilt beyond a reasonable doubt prior to arresting a suspect. Krause v. R.O. Bennet, Jr., 887 F.2d 362 (2nd Cir. 1989)(officer need not investigate every lead prior to arresting suspect); Hahn v. County of Otsego, 820 F.Supp. 54, 55 (N.D.N.Y. 1993)(proof of illegal activity beyond a reasonable doubt not necessary to establish probable cause: "mere probability of criminal activity, based on the totality of the circumstances, . . . satisfies the Fourth Amendment.")   The fact that the police had reasonably trustworthy information that Rizzo made a threatening call to the school was sufficient to establish probable cause to arrest her on the charge of Harassment.   Accordingly, defendants' motions for summary judgment with respect to plaintiff's false arrest, false imprisonment, and civil rights claims are granted, and those causes of action are dismissed.

   3.   Plaintiff's malicious prosecution claims are barred
        because there was probable cause to arrest and prosecute
        plaintiff on the Second Degree Harassment Charge.

     As stated above, a finding of probable cause to arrest will

serve as a complete defense to a claim for malicious prosecution

absent evidence that authorities became aware of or suppressed

exculpatory evidence subsequent to the plaintiff's arrest but prior

to prosecution.  Williams v. City of New York, 2003 WL 22434151

(S.D.N.Y. October 23, 2003).  In the instant case, for the reasons

stated above, I find that there was probable cause to arrest the

plaintiff on the Harassment charge.  Moreover, there is no evidence

that the authorities became aware of any exculpatory information

that would have resulted in a lack of probable cause to prosecute

the plaintiff.  Moreover, upon a review of the record, I find no

evidence that the prosecution was undertaken with any malice.

Accordingly, I grant defendants' motion for summary judgment with

respect to plaintiff's malicious prosecution claims, and dismiss

those claims.


   B.   Intentional Infliction of Emotional Distress

     To state a claim for intentional infliction of emotional

distress, a plaintiff must allege that: "(1) [the defendant engaged

in] extreme and outrageous conduct; (2) [with] intent to cause, or

reckless disregard of a substantial probability of causing, severe

emotional distress; (3) a causal connection between the conduct and

the injury; and (4) severe emotional distress." <u>Stuto v. Fleishman</u>,
164 F.3d 820, 827 (2d Cir.1999).  The conduct complained of must be
"so outrageous in character, and so extreme in degree, as to go
beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized society." <u>Fischer
v. Maloney</u>, 43 N.Y.2d 553, 558 (1978).  Similarly, to establish a
claim for negligent infliction of emotional distress, the plaintiff
must allege, <u>inter</u> <u>alia</u>, "that the defendant engaged in extreme or
outrageous conduct recklessly causing severe emotional distress."
<u>Wilson v. Consolidated Rail Co.</u>, 810 F.Supp. 411, 416 (N.D.N.Y.
1993)(citations omitted); <u>See</u> <u>also</u>, <u>Fischer v. Maloney</u>, 43 N.Y.2d
553, 557, (1978).  Ordinarily, whether the challenged conduct is
sufficiently outrageous will be determined as a matter of law.
<u>Nevin v. Citibank</u>, 107 F.Supp.2d 333, 345-46 (S.D.N.Y. 2000)(citing
<u>Howell v. New York Post Company, Inc.</u>, 81 N.Y.2d 115, 121 (1993).

In the instant case, plaintiff has failed to establish that
the defendants engaged in conduct that goes beyond the bounds of
human decency.  Accordingly, I grant Coriddi and the City of
Rochester's motion for summary judgment with respect to these
claims.


III. Defendant Edison and Accongio's Motion for Summary
     <u>Judgment</u>.

A.   False Arrest, False Imprisonment, Malicious Prosecution,
     <u>and Civil Rights Claims</u>.

21

To the extent that plaintiff alleges claims against defendants Edison and Accongio for false arrest, malicious prosecution, false imprisonment, and violation of the plaintiff's civil rights, defendants' motion for summary judgment is granted, and those claims are dismissed. As stated above, there was probable cause to arrest and prosecute the plaintiff, which acts as a complete defense to these claims.

B.    Intentional Infliction of Emotional Distress

For the reasons stated above, I find that plaintiff has failed to state a cause of action for intentional infliction of emotional distress.

C.    Libel Claims

Plaintiff claims that defendants Edison and Accongio libeled her by making false reports of the circumstances surrounding the May 21, 2001 altercation between her and a student; by publishing a letter to students and parents containing false information regarding the bomb threat incident, and by publishing a press release containing false information regarding the bomb threat incident.

Under New York Law, to state a prima facie case of libel, the plaintiff must allege (1) a defamatory statement of fact; (2) regarding the plaintiff; (3) published to a third party by the defendant; and (4) injury to the plaintiff. Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 61 (2d Cir. 1993).

22

As an initial matter, with respect to the report authored by Accongio, plaintiff has failed to state a claim for libel because she has failed to identify in the complaint the actual words that are the basis of the alleged libel. <u>Daniels v. Provident Life and Casualty Ins. Co.</u>, 2001 WL 877329 (W.D.N.Y., July 25, 2001)(Elfvin, S.J.)(citing New York State Civil Practice requirement that the actual words constituting libel must be set forth in the Complaint); N.Y. C.P.L.R. 3016(a) (McKinney 1991)("[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally.")

With respect to the news release, I find that plaintiff has failed to allege the publication of a false statement.  The news release stated in whole that:

> On Thursday, May 24 at approximately 2:15 p.m. a female voice identifying herself as Mary Rizzo called the Charter School of Science and Technology.  The caller threatened to blow up the school and shoot office staff.
> Principal, Dr. Joseph Accongio immediately notified the police and implemented the school security plan.  The school was locked down and the case was turned over to the police.  As a cautionary measure, a decision was made to close school on Friday, May 25.  Late last night the police notified Dr. Accongio that an arrest was made.
> School will reopen on Tuesday, May 29, with increased security.  On Tuesday, May 29 there will be a Parent Meeting held at 7:00 p.m. in the CSST Café.

Copy of Press Release dated May 25, 2001, attached as Exhibit 41 to Defendants' Joint Exhibits in Support of their Motions for Summary Judgment.

The May 25, 2001 Press Release does not contain any false statement regarding the plaintiff.  The uncontroverted evidence in the record indicates that the school did receive a threatening phone call from a female caller identifying herself as Mary Rizzo. Thus there is a factual basis for the information contained in the Press Release.

Similarly, with respect to the May 29, 2001 letter issued by Accongio to parents and students, I find that plaintiff has failed to identify a false statement of fact.  The letter states that the school received a threatening call from a female identifying herself as Rizzo.  The letter further stated what actions were taken in response to the threat, and what actions would be implemented.  The letter concluded by stating that Rizzo would not be allowed to approach or enter the school until the legal process was complete.  See May 29, 2001 letter to Parents attached to Plaintiff's Complaint.

Nothing in this letter constitutes a false statement of fact regarding the plaintiff.  Accordingly, I grant defendants' motion for summary judgment, and dismiss plaintiff's libel claims.

D.   <u>Negligence Claims</u>

24

Plaintiff alleges that defendants Accongio and Edison were negligent in: (1) failing to supervise students at the school thus allowing a student to harm her; (2) failing to supervise the premises to ensure the safety of the plaintiff; (3) failing to install a telephone system that could identify the source of received telephone calls; (4) failing to institute procedures for properly handling threatening telephone calls; (5) failing to train staff to handle threatening telephone calls; (6) disseminating false and derogatory information regarding the plaintiff; (7) failing to determine the accuracy of derogatory information about the plaintiff prior to disseminating that information; (8) failing to properly coordinate the investigation of the phone call; (9) providing false information to parents and news organizations regarding the plaintiff.

None of these allegations states a claim for negligence. Plaintiff's claims for injuries occurring on-the-job are preempted by worker's compensation. Plaintiff's claims regarding the dissemination of false information are without merit as she has failed to identify any false information that was disseminated by the defendants. The remaining claims fail to state a cause of action as plaintiff has failed to identify a duty legally owed by the defendants to the plaintiff, and a breach of that duty resulting in harm to the plaintiff.

<u>CONCLUSION</u>

For the reasons set forth above, defendants' motions for summary judgment, (docket items 42 and 44), are granted, and plaintiff's motion for summary judgment, (docket item 50) is denied.  Plaintiff's complaint is dismissed with prejudice.


ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          March 10, 2005